IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | Case No.:  11-cr-306 (EGS) |
| v. | |
| PEDRO ALEJANDRO RUBIO PÉREZ, | |
| Defendant. | |

DEFENDANT'S MOTION TO SUPPRESS ELECTRONIC EVIDENCE

COMES NOW DEFENDANT, Pedro Rubio, by and through undersigned counsel, and respectfully requests that this Court suppress all electronic surveillance in his case.

Concise Argument

As a preliminary matter, Mr. Rubio respectfully requests the Court to order the government to indicate which Title III wiretaps they intend to use at trial. This request is based upon the government's previous representations revealing that the wiretap supporting documents are incomplete. Given this foundational evidentiary defect, any wiretap evidence should be inadmissible.

Assuming the government can establish an evidentiary foundation for admissibility, Mr. Rubio respectfully submits that such evidence must be suppressed given the failure to comply with the requirements of Title III as set forth fully below.

Preliminary Matter of Evidentiary Foundation

The government has informed the Court, in open court and by pleading, that the wiretap supporting documentation is incomplete.[1] Therefore, Mr. Rubio cannot fully investigate, or litigate, the admissibility of the wiretaps, nor can the Court review compliance by government agents with Title III requirements. Accordingly, such evidence is inadmissible.

The following authority and argument is submitted given the government's indication that they will attempt to introduce such evidence. So the Court may review the wiretap discovery provided by the government, a USB thumb-drive containing all the wiretap documents received by the defense from the government will be delivered to chambers contemporaneously with the filing of this motion. This material is in the form received from the government and includes a table prepared by government counsel detailing the Title III wiretaps.

Procedural Background & Legal Authority

The government seeks to introduce electronic surveillance in the form of wiretaps against Mr. Rubio. The wiretaps were part of a Title III investigation conducted by the office of the District Attorney for Imperial County, California. *See* ECF 15, Sept. 30, 2016. Mr. Rubio respectfully submits that Title III of the Omnibus Crime Control & Safe Streets Act, 18 U.S.C. §2510 *et. seq.* was violated due to the government's failure to follow statutory procedure and necessary

---

[1] *See* ECF 15, Joint Status Report; and, representations made by government counsel at status hearings on April 15, 2016, June 23, 2017, August 22, 2016, October 13, 2016, and December 7, 2016.

authorizations for the proposed surveillance orders. *See United States v. Robinson,* 698 F.2d 448 (D.C. Cir. 1983), *citing,* 18 U.S.C. §2515 (1976). *See generally United States v. Anderson,* 39 F.3d 331 (D.C. Cir. 1994).

Under Title III, 18 U.S.C. §§2516-2518, law enforcement agents are required to present their surveillance requests to a duly authorized person at the Department of Justice (DOJ) for approval. The Attorney General, or his duly designated representative, will then review the request for electronic surveillance, including application and supporting affidavit. Should the documentation prove sufficient, an authorization letter from DOJ will issue. This authorization letter becomes part of the packet presented to a district court judge for the appropriate surveillance order. Unfortunately, as previously noted, the documents supporting the surveillance in this case are incomplete per the government's own representations.

The importance of proper procedure and strict compliance with statute begins with the agent, and immediately spills over to the Assistant U.S. Attorney that is supposed to shepherd the surveillance request packet to superiors and eventually to the Attorney General or his duly designated subordinate. The U.S. Attorney Manual notes the importance of this procedure:

> 9-7.110 Format for the Authorization Request
> When Justice Department review and approval of a proposed application for electronic surveillance is required, the Electronic Surveillance Unit of the Criminal Division's Office of Enforcement Operations will conduct the initial review of the necessary pleadings, which include:

  A. The affidavit of an "investigative or law enforcement officer" of the United States who is empowered by law to conduct investigations of, or to make arrests for, offenses enumerated in 18 U.S.C. § 2516(1) or (3) (which, for any application involving the interception of electronic communications, includes any Federal felony offense), *with such affidavit setting forth the facts of the investigation that establish the basis for those probable cause (and other) statements required by Title III to be included in the application;*

  B. The application by any United States Attorney or his/her Assistant, or any other attorney authorized by law to prosecute or participate in the prosecution of offenses enumerated in 18 U.S.C. § 2516(1) or (3) that provides the basis for the court's jurisdiction to sign an order authorizing the requested interception of wire, oral, and/or electronic communications; and

  C. A set of orders to be signed by the court authorizing the government to intercept, or approving the interception of, the wire, oral, and/or electronic communications that are the subject of the application, including appropriate redacted orders to be served on any relevant providers of "electronic communication service" (as defined in 18 U.S.C. § 2510(15)).

United States Attorney Manual, Department of Justice, September 1997 (emphasis added).  Mr. Rubio objects to the consideration of this proffered evidence given the incomplete documentation as it relates to compliance with Title III procedure.

Mr. Rubio Stands As An Aggrieved Party

Title 18 U.S.C. §2518(10)(a) permits any aggrieved person to move to suppress evidence derived from illegally obtained electronic surveillance. *See Alderman v. United States,* 394 U.S. 165, 171-174 (1969); *United States v. Williams,* 580 F.2d 578 (D.C. Cir. 1978).  An "aggrieved person" is defined under Title 18 U.S.C. §2510(11) as "a person who was a party to any intercepted wire, oral or electronic communication or a person against whom the interception was directed."

*United States v. Bellosi*, 501 F.2d 833, 842 (D.C. Cir. 1974). Mr. Rubio is an aggrieved party under the statutory authority and case law cited.

As an aggrieved party, Mr. Rubio respectfully moves this Court to suppress the electronic surveillance. Pursuant to 18 U.S.C. §2518(10)(a):

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived there from, on the grounds that the communication was unlawfully intercepted; the order of authorization or approval under which it was intercepted is insufficient on its face; or the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived there from, shall be treated as having been obtained in violation of this chapter. Mr. Rubio, as an aggrieved party with standing, asserts violations of all three elements listed in §2518 (10)(a) and seeks suppression of all electronic surveillance collected in this case.

Suppression of Evidence Derived From Title III Surveillance

Mr. Rubio also seeks suppression of any and all evidence derived from the illegally obtained electronic surveillance evidence. "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication *and no evidence derived therefrom may be received in evidence in any trial*, hearing, or other proceeding in or before any court [or] grand jury … if the disclosure of that

information would be in violation of this chapter." 18 U.S.C. §2515 (2004)(emphasis added), *as cited in, In re Evans,* 452 F.2d 1239, 1243 n.8 (D.C. Cir. 1971).

## The Necessity Requirement

Mr. Rubio submits that he cannot evaluate the necessity prong of Title III analysis given the incomplete nature of the supporting documentation. This analysis is crucial to a court's evaluation of admissibility. Exhaustion of investigative techniques must be tried or proven unsuccessful prior to resorting to the extreme measure of electronic surveillance. The Supreme Court, in the case of *Giordano*, described the Congress' intent to be "doubly sure" before resorting to electronic surveillance:

> Congress legislated in considerable detail in providing for applications and orders authorizing wiretapping and evinced the *clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications. These procedures were not to be routinely employed as the initial step in criminal investigation.* Rather, the applicant must state and the court must find that normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. §§ 2518 (1)(c) and (3)(c).

*United States v. Giordano,* 416 U.S. 505, 515 (1974)(emphasis added). Title III expressly provides that, prior to authorizing a wiretap, the issuing judge must find, in addition to probable cause, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. §2518(1)(c)(2004). *See United States v. Oriakhi,* 57 F.3d 1290, 1298 (4th Cir. 1995)(citations omitted), *cert. denied,* 561 U.S. 952 (1995)(law

enforcement must assure that the drastic and invasive measure of wiretapping is "not resorted to in situations where traditional investigative techniques would suffice to expose the crime"). *See generally, United States v. Carneiro,* 861 F.2d 1171, 1178 (9th Cir. 1988).

The legislative history behind the statue speaks best of this requirement:

> This requirement is patterned after traditional search warrant practice and present English procedure in the issuance of warrants to wiretap by the Home Secretary. [Citation omitted.] The judgment would involve a consideration of all the facts and circumstances. *Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover [**14] agents or informants.* Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. [Citations omitted.] *What the provision envisions is that the showing be tested in a practical and common sense fashion.* [Emphasis added].

S. Rep. No. 1097, 90th Congress, 2nd Session 101 (1968); *as cited in, United States v. James,* 494 F.2d 1007, 1015-1016 (D.C. Cir. 1974)(emphasis added). Admittedly, the government is "not required to enumerate every technique or opportunity missed or overlooked," and only needs to show that other techniques would be "impracticable under the circumstances." *United States v. Sobamowo,* 892 F.2d 90, 93 (D.C. Cir. 1989), and *United States v. Johnson,* 696 F.2d 115, 123 (1982).

The Court should not accept generalized allegations by law enforcement about a case and whether or not it is difficult to investigate. In *United States v. Robinson,* the Court of Appeals stated:

7

> … we must be careful not to permit the government merely to characterize a case as a "drug conspiracy" … that is therefore inherently difficult to investigate. The affidavit must show with specificity why in *this particular investigation's* ordinary means of investigation will fail.

698 F.2d 448, 453 (D.C. Cir. 1983)(*per curiam*)(emphasis in original), *as cited in, United States v. Ippolito,* 774 F.2d 1482 (9th Cir. 1985).

Tables I and II, attached to this motion as exhibits, reveal how government agents resorted to electronic eavesdropping with regularity, and absent exhaustion of normal investigative means. Over a 23-month period, 43 wiretap requests were submitted on 47 telephones. Mr. Rubio submits that this extreme level of surveillance fails to fulfill the intent of Title III requirements. Rather, what is does show can only be described as standard operating procedure by law enforcement.

As an example, one need only review the initial affidavit for electronic surveillance made in October of 2003, and the last affidavit submitted in September of 2005. The comparison of investigative techniques can best be categorized as a study of computer cutting-and-pasting. The confidential source section only speaks to one confidential source. The section is severely redacted, and then copied boilerplate language concludes the section. *See* October 2003 Affidavit, p.9-10 ¶19-20, compared with September 2005 Affidavit, p.22-23 ¶90-91. The section detailing undercover agents is similarly boilerplate with the exception of the affiant noting the difficulty of operating in Mexico. *See* October 2003 Affidavit, p.10 ¶21-22, compared with September 2005 Affidavit, p.23 ¶92-93.

The section devoted to physical surveillance is significant, not so much because of boilerplate language, but rather because of descriptions of successful law enforcement techniques. Both the 2003 and 2005 affidavits note the success of physical surveillance; hence, the last resort of electronic surveillance should not be warranted. *See* October 2003 Affidavit, p.10-12 ¶23-30, compared with September 2005 Affidavit, p.24-26 ¶94-98.

Executive Review

Beyond the need to exhaust other less invasive investigative techniques, at the core of Title III analysis is the statutory intent for the executive branch to fully review any surveillance request and offer approval prior to the presentation of such a request to the judiciary. As the Supreme Court stated in *Giordano:* "The *mature judgment* of a particular, responsible Department of Justice official is interposed as a critical precondition to any judicial order. *Giordano, supra,* 416 U.S. at 515-516 (emphasis added). This is not "nit-picking" or "etiquette," such a violation defeats the protection provided under the statutes and calls for suppression of any evidence collected or derived from the wiretap or surveillance. *United States v. Reyna,* 218 F.3d 1108, 1111 (9th Cir. 2000). The *Giordano* opinion warns:

> We are confident that the provision for pre-application approval was intended to play *a central role in the statutory scheme* and that suppression must follow when it is shown that this statutory requirement has been ignored.

*Giordano, supra,* 416 U.S. at 528 (emphasis added). Failure on the part of the government to comply with the statutory requirements "directly and substantially"

impacts the rights of Mr. Rubio. *Giordano, supra, 416 U.S. at 526.* Mr. Rubio submits that such a failure occurred in his case. Absent a complete set of supporting documentation, there can be no other outcome short of suppression.

## Probable Cause

Probable cause is also compromised as a result of the incomplete documentation. *See* 18 U.S.C. §2518(1)(b), and (1)(c). The failure to meet these requirements under the Fourth Amendment and as more particularly set forth in 18 U.S.C. §2518(1)(c) and (3)(c), if not fully established by the Government's affidavit and application for an order, is a failure to establish probable cause. Additionally, the sheer repetition of requests, as shown in Tables I and II, shows that law enforcement was "piggy-backing" the applications and affidavits. The question for the Court is "…[w]ill an affidavit pass muster by piggy-backing a valid affidavit that was used in support of an application to tap another phone at a different location?" *Calhoun v. State,* 367 A.2d 40 (Md. 1977). *See also United States v. Blackmon,* 273 F.3d 1204 (9th Cir. 2001); *Castillo-Garcia,* 117 F.3d 1179 (10th Cir. 1997)(overruled on other grounds in *United States v. Ramirez-Encarnacion,* 291 F.3d 1219 (9th Cir. 2002)).

## Minimization

Title III surveillance of telephone calls also requires that the surveillance "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. §2518(5)(2004). "Each aggrieved person is entitled to question whether the statutory minimization requirement has

2

been satisfied and, on proving that it has not, to move to suppress a communication on the grounds that 'the interception was not made in conformity with the order of authorization or approval.'" 18 U.S.C. §2518(10)(a)(iii), *as cited in, United States v. Scott,* 504 F.2d 194 (D.C. Cir. 1974). In this case, the minimization requirement cannot be evaluated due to the incomplete documentation presented by the government. Mr. Rubio is unable to evaluate the number of targeted individuals, the ambiguity of the intercepted conversations, the complexity of the acts under investigation, and the general extent of the issuing judge's involvement in the electronic surveillance. *United States v. Ozar,* 50 F.3d 1440, 1447 (8th Cir. 1995), *cert. denied,* 516 U.S. 871 (1995). Only a full review of documentation, and interim reports, will allow a full and proper evaluation of what law enforcement was doing while 43 requests for electronic surveillance flooded the courts.

### Sealing of Title III Wiretaps

Pursuant to 18 U.S.C. §2518(8)(a), "[t]he contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device" and that recording "shall be done in such way as will protect the recording from editing or other alterations." The section further provides that "[i]mmediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions." *United States v. Ojeda Rios,* 495 U.S. 257, 259-60 (1990). Failure to properly seal the recordings will result in the suppression of the recordings. *Id.*

As previously referenced when discussing the authorization procedure, and now the importance of sealing the recordings, each Assistant U.S. Attorney is guided by the DOJ U.S. Attorney's Manual, which directs:

> 9-7.250 Use and Unsealing of Title III Affidavits
> When the government terminates a Title III electronic surveillance investigation, it must maintain under seal all of the Title III applications and orders (including affidavits and accompanying material) that were filed in support of the electronic surveillance. *See* 18 U.S.C. § 2518(8)(b); *In re Grand Jury Proceedings*, 841 F.2d 1048, 1053 n.9 (11th Cir. 1988) (although 18 U.S.C. § 2518(8)(b) refers only to "applications" and "orders," "applications" is construed to include affidavits and any other related documentation).

At this time the defense has not been provided with any information regarding when and how each wiretap was sealed. Accordingly, this issue is raised to preserve the matter for future litigation.

## Conclusion

Federal courts have recognized the Congressional intent of guarding against "judge-shopping" when successive applications are filed. *United States v. Bellosi*, 501 F. 2d 833, 838 and 841 (D.C. Cir. 1974). It is noted that in the final affidavit, submitted in September of 2005, in describing past wiretaps, the affiant lists 53 applications presented to one Imperial County judge. The remaining 11 applications were shared between five judges.

Through the use of applications and extensions, law enforcement impermissibly extended their invasion of privacy without support and outside of statutory requirements meant to carefully monitor the extreme measure of electronic surveillance. In *Berger v. State of New York,* the Supreme Court traced

the development of wiretap law and in discussing its roots in the 4th Amendment exclusionary rule warned:

> The effect of the Fourth Amendment is to put the courts of the United States . . . under limitations and restraints as to the exercise of such power . . . *and to forever secure the people . . . against all unreasonable searches and seizures under the guise of law.* This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all . . . . The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures . . . should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.

*Berger, supra,* 388 U.S. at 50 (1967)(emphasis added). This Court must act to secure and affirm the protections set forth in Congressional legislation and case law.

Finally, the incomplete nature of the wiretap authorizations also excludes a full analysis of whether suppression is warranted under a "territorial-jurisdiction limitation" analysis. *See* United States v. Glover, 736 F.3d 509 (2013).[2] The scope of jurisdiction, calls and alleged activity is certainly unclear from the Title III documents provided by the government.

---

[2] As of the day of this filing, the Supreme Court posted for merits consideration a case addressing the issue of territorial-jurisdiction in Title III electronic surveillance. The case is *United States v. Dahda*, No. 17-43 (distributed for Conference October 13, 2017). The issue in *Dahda* is framed as whether Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 requires suppression of evidence obtained pursuant to a wiretap order that is facially insufficient because the order exceeds the judge's territorial jurisdiction.

**WHEREFORE,** Mr. Rubio respectfully asks the Court for relief in the form of the suppression of evidence obtained from electronic surveillance and suppression of any evidence that was derived from such surveillance.

Filed this 16th day of October 2017.

        Respectfully submitted,

        RETURETA & WASSEM, P.L.L.C.

By: _____
    Manuel J. Retureta, Esq.
    Washington, D.C. Bar #430006
    300 New Jersey Ave., NW
    Suite 900
    Washington, D.C. 20001
    202.450.6119
    MJR@RETURETAWASSEM.COM

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing filing was served upon counsel for all parties via ECF filing on this 16th day of October 2017.

By:_____
    Manuel J. Retureta, Esq.