**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 11-cr-306 (EGS)** |
| **v.** | |
| **PEDRO ALEJANDRO RUBIO-PEREZ,** | |
| **Defendant.** | |

**GOVERNMENT'S OMNIBUS OPPOSITION TO THE
DEFENDANT'S MOTIONS ECF NO. 29, 30, 31, 32, 40, 41, 42, 45-2**

The United States respectfully submits this Opposition to: (1) Defendant's Motion for Disclosure of Anticipated Government Expert Testimony, ECF No. 29 ("Def. Mot. Expert."); (2) Defendant's Motion for Disclosure of Government's Intent to Introduce Rule 404(b) Evidence, or Evidence Deemed to be Intrinsic to the Alleged Conspiracy, ECF No. 30 ("Def. Mot. 404(b)"); (3) Defendant's Motion for Bill of Particulars, ECF No. 31, ("Def. Mot. BOP"); (4) Defendant's Motion to Dismiss Indictment for Lack of Specificity, ECF No. 32, ("Def. Mot. Dismiss"); (5) Defendant's Motion for a Preliminary Determination of Conspiracy and Limitation of Government's Opening Statement, ECF No. 40 ("Def. Mot. Prelim."); (6) Motion to Compel Disclosure of Material Submitted in Support of Extradition, ECF No.41, ("Def. Mot. Compel"); (7) Defendant's Motion for Disclosure of Informants, Production of Witness and Exhibit List, and Early Release of Jencks Material, ECF No. 42 ("Def. Mot. Wit."); and (8) Defendant's Motion for Grand Jury Minutes, ECF No. 45-2 ("Def. Mot. G.J.").

As discussed below, the Defendant's motions for ECF No. 29, 30, and 41, should be denied as moot. As further discussed below, the remaining Defendant's motions, ECF No. 31, 40, 42, and 45-2, should also be denied.

## I.      PROCEDURAL BACKGROUND

On October 15, 2011, a Grand Jury sitting in the United States District Court for the District of Columbia returned a one-count Indictment against Pedro Alejandro Rubio-Perez (hereinafter "Defendant") for violations of Title 21, United States Code, Sections 959, 960, 963, and Title 18, United States Code, Section 2.   The Defendant was arrested in Mexico in October of 2013 and extradited to the United States and made his initial appearance on November 16, 2015.   The charges of the indictment stem from a long term investigation.   Through the investigation, the DEA identified the methods used by the Defendant's drug trafficking organization (hereinafter "DTO"). During the investigation, the Drug Enforcement Administration (hereinafter "DEA") learned that the Defendant directed and assisted in the arranging, financing, purchasing and transportation of multi-ton quantities of cocaine and marijuana for importation from Mexico into the United States for distribution.   Additionally, the investigation revealed the Defendant's local distribution cells, the transportation methods used by the DTO, and various members of the conspiracy.   During the investigation, DEA learned the methods utilized by the Defendant to protect these multi-kilogram shipments worth millions of dollars from being seized from law enforcement and rival DTO's, and the acts of violence attributable to the Defendant.   Further, Title III intercepts directly show Defendant's extensive involvement in drug trafficking.

In addition to Rule 16 disclosures, the Government has provided information to the defense regarding facts underlying the charged conspiracy.   *See* Government's Omnibus Motion *In Limine*, (hereinafter "Govt. Mot. In Lim."), ECF 38 (explaining the history of the investigation and evidence of the Defendant's DTO).

## II.    ARGUMENT

### A. Defendant's Motion for Disclosure of Anticipated Government Expert Testimony is Moot

The Defendant requests the disclosure of the anticipated Government expert and the Government submits that this issue is now moot. *See* Def. Mot. Expert.  On October 16, 2017, the Government filed five Expert Notices concerning five experts that the Government intends to call at trial.  Specifically, there were three notices for chemist expert testimony: (1) ECF No. 33, which was notice of expert testimony for DEA Chemist Kenneth Booker regarding his forensic analysis of a seizure of cocaine on October 28, 2006; (2) ECF No. 34, which was notice of expert testimony for DEA Chemist Jason Bordelon regarding his forensic analysis of a seizure of marijuana on August 15, 2006; and (3) ECF No.35, which was notice of expert testimony for Chemist Minh D. Tran regarding his forensic analysis of a seizure of cocaine on May 19, 2004.  Additionally, the Government filed notice of drug expert testimony for DEA Special Agent Brendan Hanratty, ECF No. 36, and expert notice of linguist Judi O'Brien, ECF No. 37.  Pursuant to Fed. R. Evid. 16(a)(1)(G), the Government complied with the rules and filed the required notices.  Therefore, the Court should deny the Defendant's motion as this issue is now moot.

### B. Defendant's Motion for Disclosure of the Government's Intent to Introduce Rule 404(b) Evidence is Moot

The Defendant requests that the Government produce 404(b) evidence, as well as other crimes evidence intrinsic to the alleged conspiracy. *See* Def. Mot. 404(b).  The Government submits that this issue is moot.  On October 16, 2017, the Government provided notice to the Defendant of the Government's intent to seek to admit evidence of other crimes as direct evidence of the international narcotics trafficking conspiracy, as being intrinsic or inextricably intertwined with the charged conspiracy, or in the alternative, pursuant to Federal Rules of Evidence Rule

404(b).  *See* Govt. Mot. In Lim., ECF No. 38.  In this motion, the Government detailed the other crimes inextricably intertwined with the charged conspiracy or alternatively admissible pursuant to Rule 404(b).  Specifically, the Government referenced evidence of the Defendant and co-conspirator's use of violence, evidence of the Defendant's involvement in money laundering, and evidence of the Defendant's involvement in drug trafficking outside of the charged conspiracy. Therefore, the Government respectfully submits that this motion is now moot.

### C.  The Defendant is Not Entitled to a Bill of Particulars

The Court should deny the Defendant's request for a bill of particulars because the Defendant already has sufficiently specific information to prepare for his defense based on the Indictment, the discovery, and other information the Government has provided to date.  *See* Def. Mot. B.O.P.

### 1.  Legal Standard

Additional details in the form of a bill of particulars, pursuant to Fed. R. Crim. P. Rule 7(f), are not appropriate unless the indictment is too vague to inform the defendant of the nature of the charges, to allow the preparation of a defense, to avoid unfair surprise, or to allay double jeopardy concerns.  *See United States v. Edelin*, 128 F. Supp. 2d 23, 36 (D.D.C. 2001).  A defendant has no right to a bill of particulars; rather the ultimate test is whether a bill of particulars is *necessary* to accomplish these purposes.  *United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 316 (D.D.C. 2012) (internal citation and quotation marks omitted) (emphasis added).

"[I]f the requested information is available in some other form," a bill of particulars is not warranted.  *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987); *see also, United States v. Mack*, 53 F. Supp. 3d 179, 190-91 (D.D.C. 2014) (denying motion for bill of particulars after finding that the indictment, the Government's reply motion, and the discovery provided,

sufficiently detailed the allegations); *United States v. Martinez*, 764 F. Supp. 2d 166, 173-74 (D.D.C. 2011) (denying motion for bill of particulars because "ample discovery provided to defendant" was evidence that "the requested information is available in another form.") (internal citation omitted); *United States v. Gray*, 723 F. Supp. 2d 82, 86 (D.D.C. 2010) (denying motion for bill of particulars because "information sought by defendant is available to him through the full discovery provided by the government."); *Edelin*, 128 F. Supp. 2d at 37 (providing that the voluminous discovery already provided to the defendants more than compensates for the lack of a bill of particulars); *United States v. Cooper*, 91 F. Supp. 2d 79, 84 (D.D.C. 2000) (denying motion for bill of particulars when indictment provided "each of the violations involved, the dates and times of those violations, and the statutes violated" and the government had provided ample discovery).

Further, "[i]t is not the function of a bill of particulars to provide detailed disclosure of the government's evidence in advance of trial." *United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004) (internal citation omitted). A bill of particulars "properly includes clarification of the indictment, not the government's proof of its case." *United v. Savoy*, 889 F. Supp. 2d 78, 115 (D.D.C. 2012) (internal citation omitted); *see also*, *Sanford*, 841 F. Supp. 2d at 316 (stating that the role of a bill of particulars is "not to provide the defendant with the fruit of the government's investigation.") (internal citation omitted).

Accordingly, district courts in this circuit have routinely denied motions for bills of particular in narcotics conspiracy cases when the indictment is sufficiently specific and the Government has provided extensive information to the defense in the form of discovery or other documents. For example, in *Mejia*, the defendants were charged in a single-count indictment with a cocaine importation conspiracy in violation of 21 U.S.C. §§ 959, 963 and 960. *United States v.*

*Mejia*, 448 F.3d 436, at 439 (D.C. Cir. 2006).  The D.C. Circuit found that a bill of particulars was not warranted because, *inter alia*, the indictment "identifie[d] what the object of the conspiracy is as is required by 21 U.S.C. § 963, provide[d] a time period of the conspiracy, identifie[d] the statutes that the object of the conspiracy violated[,] ha[d] an identification of the proper mens rea required under Section 963, [and] identifie[d] at least five countries where the conspirators acted." *Id*. at 445 (alterations in the original omitted).  *See also*, *e.g.*, *Martinez*, 764 F. Supp. 2d at 173-74 (denying motion for bill of particulars in narcotics distribution where defendant sought information disclosing "which co-conspirator engaged in which conspiratorial act" because the indictment "allege[d] the essential facts, charge[d] the required elements, and bar[red] a second prosecution for the same offense.").[1]

In *United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172 (D.D.C. 2015), the defendants made twelve requests for additional information to be proffered by way of a bill of particulars.  *Id*. at 175.  The court in *Lorenzana-Cordon* rejected all of the defendants' requests, including a specific request for the names of co-conspirators and found there would be "serious security concerns for the safety of the government's witnesses and their families if the government were to identify co-conspirators in a bill of particulars."  *Id*.  The court in *Lorenzana-Cordon* also denied defendant's other requests as the information provided by the government was sufficiently detailed under the standard set forth in *Mejia*.  The *Lorenzana-Cordon* court also found that a bill of

---

[1] When courts have granted such motions, it is typically because multiple defendants charged in the same conspiracy require the additional information to prepare their defenses. *See, e.g., United States v. Ramirez*, 54 F. Supp. 2d 25, 30 (D.D.C. 1999) (finding that a bill of particulars is necessary in narcotics conspiracy case where multiple defendants are charged in the same conspiracy over different time periods); *cf. United States v. Bazezew*, 783 F. Supp. 2d 160, 168-69 (D.D.C. 2011) (finding that a bill of particulars is necessary in a bribery conspiracy case where the indictment alleged only one overt act for each of sixteen defendants).  Here, the Government did not charge the Defendant with acts occurring during different time frames of the conspiracy.

particulars was not necessary as the information requested by the defendants was made available by the government in some other form or fashion. *Id.* at 179.

## 2. The Indictment is Sufficiently Specific That a Bill Of Particulars is Not Warranted

As explained above, the Indictment in this case easily satisfies the Fed. R. Crim. P. Rule 7(c)(1) standard of a "plain, concise and definite written statement of the essential facts constituting the offense charged[.]" The instant Indictment clearly provides notice to the Defendant of the offense's time period and locations, the existence of co-conspirators, the object of the conspiracy, the statutes violated, and the *mens rea* required by the statutes.

In this case, Count One of the Indictment states in part as follows:

From in or about 1999, and continuing thereafter, up to and including 2009, … in the countries of Mexico and the United States, and elsewhere, the defendant, … did knowingly and intentionally combine, conspire, confederate and agree with others both known and unknown to: (1) to knowingly and intentionally distribute 5 kilograms or more of …. cocaine, and (2) to knowing and intentionally distribute 1,000 kilograms or more of …. marijuana, … knowing and intending that said controlled substances would be unlawfully imported into the United States …. in violation of Title 21, United States Code, Sections 959, 960, 963, and …

The wording of Count One clearly places the Defendant on notice as to the essential facts constituting the offense and the elements of the offense.

The Defendant argues that the Indictment fails to specify overt acts or identify the individuals with whom the Defendant conspired. Def. Mot. B.O.P. at 3. Nevertheless, the case law is clear: "the language of Section 963 does not call for any [overt acts] to be set forth in an indictment, nor do any have to have been committed in order for a § 963 violation to be proven." *Mejia*, 448 F.3d at 445. The Defendant seeks the name of every person who the Government will identify as a co-conspirator at trial, including, evidently, those whom the Government does not intend to call as a witness. Def. Mot. B.O.P. at 5. This request has no legal basis and also threatens

the safety of potential witnesses against the Defendant by prematurely revealing their identities. The Government has concerns that named co-conspirators, and their families, may be placed in danger in the event that their identities were to be needlessly revealed at this early stage. The Defendant seeks a litany of detailed information that the Government is not required to produce at this stage including: the dates and locations of conversations related to the conspiracy, the Government's theory of the defendant's own specific role in overt acts in addition to the role of other co-conspirators, and the approximate date upon which each individual defendant joined the conspiracy.  Def. Mot. B.O.P. at 5-7.

The Defendant is clearly overreaching.  This type of information need not be revealed at this stage as "[the indictment] need not spell out which co-conspirator committed which conspiratorial act[.]"  *Martinez*, 764 F. Supp. 2d at 174.

### 3.    The Requested Information is Available in Some Other Form

The Court should also find that a bill of particulars is not warranted because "the requested information is available in some other form."  *Butler*, 822 F.2d at 1193.  Specifically, the Government has provided voluminous discovery that includes, *inter alia*, reports and photographs related to seizures of cocaine shipments in which the Defendant participated; records correlating to the seizures of cocaine shipments; and intercepted telephone calls involving the Defendant and others.  The Government complied with its obligations under Rule 16, and believes it has gone beyond the requirements of Rule 16.  The Defendant therefore cannot claim that he has not received adequate notice of what he is facing at trial.  *See, e.g.*, *Mejia*, 448 F.3d at 446 (noting that the government provided proffers of witness testimony, and stating that "if the defendants felt ambushed, it was not because the government was lying in wait, but because the defendants were not looking").  Accordingly, such  sharing of information specific to the charges that the Defendant

will face belies any claim that the Defendant has received limited discovery from the Government and supports a finding that production of a bill of particulars is not required.  *See Martinez*, 764 F. Supp. 2d at 173-74 (denying motion for bill of particulars because "ample discovery provided to defendant" was evidence that "the requested information is available in another form.") (internal citation omitted); *see Lorenzana-Cordon*, 130 F. Supp. 3d 171, 179 (2015).

Given that the Defendant possesses information about the charged conspiracy, his request for a bill of particulars would only serve to compel the Government to preview its case and particularize its theory of the Defendant's guilt – which is contrary to the intended purpose of a bill of particulars.  *See Savoy*, 889 F. Supp. 2d, at 115 (noting that a bill of particulars does not include "the government's proof of its case").  Likewise, a bill of particulars in this case imposes requirements on the Government that it is not required to meet.  *Brodie*, 326 F. Supp. 2d at 91 (noting that the government is not required to "prove how or when the conspiracy was formed, the details of any meeting or when the defendant joined the conspiracy"); *see also, United States v. Pineda*, No. 02–112–12, 2007 U.S. Dist. LEXIS 8635, *2–5 (D.D.C. Feb. 7, 2007) (denying motion for bill of particulars regarding specific dates on which acts occurred because indictment provided "relative time frames when overt acts occurred" and therefore sufficiently detailed the charges and enabled the defendant to prepare a defense).

In sum, for all the reasons noted above, the Defendant's Motion for a Bill of Particulars should be denied.

### D.  Defendant's Motion to Dismiss the Indictment Due to Lack of Specificity Should Be Denied

The Court should deny the Defendant's Motion to Dismiss the Indictment due to lack of specificity on Fifth Amendment grounds, as the Indictment complies with the Federal Rules of Criminal Procedure and relevant case law.  *See* Def. Mot. Dismiss.  The Defendant's Motion to

Dismiss, and Motion for a Bill of Particulars, rests on the premise that the Indictment lacks the specificity necessary to provide him with sufficient notice of the charges against him and the ability to protect against future jeopardy of the same offense, in violation of the Fifth Amendment and Fed. R. Crim. P. Rule 7(c).  *Id.* at 2.  This argument fails because the Indictment appropriately alleges all of the elements of the offense and cites to the statutory provisions that the Defendant allegedly violated.  It affords fair notice of the offense such that jeopardy would attach upon conviction.  In sum, the Indictment satisfies the Constitution and the requirements of Rule 7(c).  Therefore, the Defendant's motion must be denied.

       1.  <u>Legal Standard</u>

    In determining an indictment's sufficiency under the Fifth Amendment, the court must consider three factors.  A valid indictment must: (1) allege the essential facts constituting the offense, (2) allege each element of the offense, so that fair notice is provided, and (3) be sufficiently distinctive that a verdict will bar a second prosecution for the same offense.  *United States v. Verrusio,* 762 F.3d 1, 13 (D.C.Cir. 2014).  *See also, United States v. Hitt,* 249 F.3d 1010, 1016 (D.C.Cir. 2001) (stating that an "indictment's main purpose is to inform the defendant of the nature of the accusation against him") (*citing, Hamling v. United States*, 418 U.S. 87, 117 (1974)).  The district courts in this district have adhered to the analysis described above.  *See Martinez,* 764 F. Supp. 2d at 170.  The Fifth Amendment's notice requirement, set forth in factors (1) and (2) above, is embodied in Rule 7(c) of the Federal Rules of Criminal Procedure.  *United States v. Resendiz-Ponce,* 549 U.S. 102. 108-109 (2007).  Fed. R. Crim. P. Rule 7(c) provides:

> The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . . For each count, the indictment . . . must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

Fed. R. Crim. P. Rule 7(c)(1).  In most cases, detailed allegations "surely are not contemplated by Rule 7(c)(1) …."  *Resendiz-Ponce,* 549 U.S. at 109.  The Federal Rules of Evidence were "designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure."  *Id.*  An indictment that restates the language of a federal criminal statute is ordinarily sufficient.  *Id.*

To satisfy the first factor in the analysis, requiring that an indictment allege essential facts constituting the offense, an indictment must include "such a statement of facts and circumstances as will inform the accused of the specific offense coming under the general description, with which he is charged."  *Hamling*, at 117-18.  A statement of facts and circumstances need not be overly specific as to the acts or activities which were allegedly carried out to constitute the charged offense.  Rather, an indictment is sufficiently specific if it "alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege any specific overt act in furtherance of the conspiracy."  *Ramirez*, 54 F. Supp. 2d at 30; *see also, United States v. Coleman*, 664 F. Supp. 548, 549 (D.D.C. 1985) (Robinson, C.J.) (finding that an indictment satisfied Fed. R. Crim. P. 7(c)(1) where it "sufficiently describe[d] the 'actions of the defendants,' 'the date of these actions,' 'the place,' and 'the precise regulations which the government claims were violated.'").

To satisfy the second factor of the analysis, requiring that an indictment allege each element of the offense, an indictment may track the language of the charged statute provided that it includes every element of the offense.  *United States v. Pickett*, 353 F.3d 62, 67 (D.C. Cir. 2004).  Furthermore, in cases where the Government charges conspiracies under the Controlled Substances Act, as in this case, the Government need not allege nor prove an overt act in furtherance of the conspiracy. *United States v. Shabani*, 513 U.S. 10, 11 (1994) (holding that the

government need neither allege nor prove the commission of an overt act to establish a violation of 21 U.S.C. § 846, which is worded identically to 21 U.S.C. § 963).  It follows, then, that an indictment charging a conspiracy under the Controlled Substances Act need not include specific alleged overt acts, but merely, the language of the statutory offense charged. *See United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006) (upholding an indictment charging 21 U.S.C. § 963, that did not allege any overt acts).

Finally, to satisfy the third factor, requiring that an indictment be sufficiently distinctive so that a verdict will bar a second prosecution for the same offense, an indictment must be specific as to the essential elements of the offense, most importantly, the dates of the given conspiracy and the object of the conspiracy.  *Martinez,* 764 F. Supp. 2d at 171.  Notably, "neither the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed."  *Id.* at 171; *accord, United States v. Bazezew*, 783 F. Supp. 2d 160, 168 (D.D.C. 2011) (holding "The defendant is not entitled to know all the evidence the government will use against him at trial[,]' but he must be 'adequately informed' of those charges so that he may prepare a defense for trial.") (citation omitted).

### 2. The Indictment is Specific and Complies with the Federal Rules of Criminal Procedure and Relevant Case Law

In this case, Count One of the Indictment satisfies Rule 7(c)(1) and adequately informs the Defendant of the offense with which he is charged and enables him "to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hitt,* 249 F.3d at 1016.

The Defendant, in his motion, argues that the Indictment lacks sufficient specificity as to the locations where the offense took place, the identity of co-conspirators, the failure to charge specific drug transactions, and the quantity of drugs involved.  In support of his argument, the

Defendant cites *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006), Def. Mot. to Dismiss at 4, where the Court denied a motion for a bill of particulars based on an indictment that set forth "what the object of the conspiracy [was as] required by 21 U.S.C. § 963, …a time period of the conspiracy, …the statutes that the object of the conspiracy violated, …the proper *mens rea* required under Section 963, and … [the] five countries where the conspirators acted." *Mejia*, 448 F.3d at 445.

The Defendant's reliance on *Mejia* is misplaced. In *Mejia*, the defendant moved for a bill of particulars on the basis that the indictment did not contain "overt acts or specific information" regarding the defendant's criminal activity. *Mejia*, 448 F.3d at 445. The court was not asked, however, to determine the sufficiency of the indictment on Fifth Amendment grounds. In this regard, the Defendant improperly cites *Mejia* as legal authority that supports his claim that these particular details must be set forth in an indictment in order for the indictment to be sufficient. As detailed below, the Indictment against the Defendant sufficiently comports with the statute and relevant case law of this jurisdiction.

The instant Indictment clearly provides notice to the Defendant of the offense's time period and locations, the existence of co-conspirators, the object of the conspiracy, the statutes violated, and the *mens rea* required by the statutes.

In this case, Count One of the Indictment states in part as follows:

> From in or about 1999, and continuing thereafter, up to and including 2009, … in the countries of Mexico and the United States, and elsewhere, the defendant, … did knowingly and intentionally combine, conspire, confederate and agree with others both known and unknown …. (1) to knowingly and intentionally distribute 5 kilograms or more of …. cocaine, and (2) to knowing and intentionally distribute 1,000 kilograms or more of …. marijuana, …. knowing and intending that said controlled substances would be unlawfully imported into the United States .... in violation of Title 21, United States Code, Sections 959, 960, 963, and ….

The wording of Count One clearly places the Defendant on notice as to the essential facts constituting the offense and the elements of the offense.  "The validity of an indictment is not a question of whether it could have been more definite and certain."  *Verrusio,* 762 F.3d at 13 (*citing*, *United States v. Debrow*, 346 U.S. 374, 378 (1953).  The Indictment informs the Defendant of the precise offense of which he is accused and is quite similar to the indictment found sufficient in *Martinez.*   In *Martinez*, the district court denied a motion to dismiss a 21 U.S.C. §§ 841, 846 indictment, which charged that:

> [F]rom on or about November 1, 2005 ... and continuing thereafter up to and including at least March 3, 2009, in the District of Columbia, the state of Maryland, the State of Texas, and elsewhere, defendant and seven co-defendants did unlawfully, knowingly and intentionally combine, conspire, confederate and agree together and with others known and unknown to the Grand Jury, to unlawfully, knowingly and intentionally distribute and possess with intent to distribute 50 grams or more of crack cocaine and 5 kilograms or more of powder cocaine, in violation of 21 U.S.C §§ 841(a)(1), 841(b)(1)(A)(ii), and 841(b)(1)(A)(iii).

*Martinez*, 764 F. Supp. 2d, at 170.

The Court found that the indictment "allege[d] the essential facts," "charged] all the required elements," and was "sufficiently distinctive that a verdict would bar a second prosecution for the same offense."  *Id.* at 170-71.

Even if the Court were to consider *Mejia* as the standard, as the Defendant improperly argues, the Indictment in the instant matter sets forth the alleged offense's time period, the object of the conspiracy, at least two countries in which the conspiracy took place, the specific language of the statutes violated, and the *mens rea* requirement of "knowing and intentional" participation in the criminal act, mirroring the indictment under consideration in *Mejia*.  448 F.3d at 455.  In this regard, the Indictment before the Court in this matter is sufficient under the standards set forth by statute and as interpreted in *Mejia*.  Thus, even under the standard suggested by the Defendant, the Defendant is adequately apprised of the charges against him and can prepare a defense.

14

### 3.   The Names of Co-Conspirators Are Not Required in an Indictment

Defendant's argument that the Indictment should be dismissed because it does not name a co-conspirator is without merit.  *See* Def. Mot. to Dismiss at 6.  The Defendant is not charged in the Indictment with other co-defendants.  Regardless, an indictment charging that a defendant participated in a conspiracy need not name any specific co-conspirator; moreover, the Government need not name any specific co-conspirator at trial to support a conspiracy conviction.  *See United States v. Sanchez-Garcia*, 461 F.3d 939, 945-46 (8th Cir. 2006) (affirming a conspiracy conviction because "[t]he failure to identify whom [the defendant] was working with is not fatal to the government's case"); *United States v. Contreras*, 249 F.3d 595, 598 (7th Cir. 2001) (noting that "the government need not always establish specifically with whom the defendant conspired"); *United States v. Womack*, 191 F.3d 879, 885 (8th Cir. 1999) (holding "Although there were no other co-conspirators named in the indictment, this factor does not preclude a finding of a conspiracy."); *United States v. Dukes*, 139 F.3d 469, 475 (5th Cir. 1998) (stating "A person can be convicted for conspiring with unknown persons, if the indictment charges conspiracy with unknown persons and the evidence supports their existence and their complicity in the conspiracy."); *see also, Wheeler v. United States*, 977 A.2d 973, 981 n.14 (D.C. 2009).

The identities of additional co-conspirators have not been revealed to the Defendant at this time.  However, the Defendant cannot credibly claim that he is unaware of the presence of additional co-conspirators based upon the discovery provided by the Government, discussions with counsel for the Government, and the various filings in this matter which have referenced others involved in the conspiracy.

For all the reasons set out above, Count One of the Indictment satisfies Rule 7(c)(1)'s command of a 'plain, concise, and definite written statement of the essential facts constituting the offense charged."

### E.  Defendant's Motion for a Preliminary Determination of Conspiracy and Limitation of Government's Opening Statement

Defendant argues that pursuant to Fed. R. Evid. 104 and 801(d)(2)(E), and relevant case law, this Court should conduct a pre-trial hearing and make a pre-trial determination of the existence of a conspiracy, as well as determine the admissibility of any statements of alleged co-conspirators.  *See* Def. Mot. Prelim.  This claim is not supported by the case law in this or other jurisdictions.

### 1.  A Pre-Trial Hearing Is Not Preferred By the D.C. Circuit

The Court should deny the Defendants' motion for a pre-trial hearing.  This Circuit has specifically addressed the appropriateness of holding a pre-trial hearing on the admissibility of co-conspirator statements and routinely endorsed deferring the determination of a defense motion until trial if that motion requires "deciding issues of fact that are inevitably bound up with the evidence about the alleged offense itself."  *United States v. Wilson*, 26 F.3d 142, 159 (D.C. Cir. 1994), *cert. denied* 514 U.S. 1051 (1995).  Moreover, trial courts are permitted significant discretion to allow co-conspirator statements without conducting a pretrial hearing.  *See United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980) (holding the District Court has "no obligation" to conduct a "mini-trial" before trial to determine the existence of a conspiracy, and noting that the trial judge is "vested with considerable discretion to admit particular items of evidence 'subject to connection'") and *United States v. Gantt,* 617 F.2d 831, 845 (D.C. Cir. 1980) (abrogated on other grounds by *In re Sealed Case*, 99 F.3d 1175, 1178 (D.C. Cir. 1996). (upholding the trial court's refusal to hold a pretrial hearing and explaining that "to avoid what otherwise

would become a separate trial on the issue of admissibility, the court may admit declarations of co-conspirators 'subject to connection.'")

The Government seeks to introduce co-conspirator statements at trial pursuant to Fed. R. Evid. 801(d)(2)(E), which provides that "a statement is not hearsay if the statement is offered against an opposing party and...was made by the party's co-conspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To admit such statements, a district court must find by a preponderance of the evidence that (1) a conspiracy existed, (2) the Defendant and the declarant were involved in the conspiracy, and (3) the statement was made in furtherance thereof. *See Bourjaily v. United States*, 4843 U.S. 171, 175-76 (1987). The D.C. Circuit additionally requires the Government to offer independent evidence of the conspiracy apart from the statement; however, the content of the statement itself can also be considered in determining whether such independent evidence exists. *See, e.g., United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006) (citing *Bourjaily*, 483 U.S. at 181) (upholding the district court ruling admitting co-conspirator statements when the court determined a preponderance of the evidence supported a finding that the conspirators and the defendant had engaged in a common enterprise of stock promotion); *United States v. Gatling*, 96 F.3d 1511, 1520 (D.C. Cir. 1996) (upholding the district court ruling in admitting co-conspirator statements when there was independent evidence to support the defendant was a member of the conspiracy.); *United States v. Beckham*, 968 F.2d 47, 51-52 (D.C. Cir. 1992) (holding that a co-conspirator statement was erroneously admitted as there was no independent evidence of a conspiracy, however did not reverse the verdict as the statement would have been admitted as an adoptive admission); *United States v. Washington*, 952 F.2d 1402, 1407 (D.C. Cir. 1991) (upholding the district court's ruling admitting a co-conspirator statement, even

when no conspiracy is charged, as long as there exist evidence independent of the statements that a conspiracy existed).

Recently, D.C. District Court Chief Judge Beryl A. Howell rejected a similar defense argument request for a pre-trial hearing on the admissibility of alleged co-conspirator statements. *See United States v. Flores-Apodaca*, No. 1:14-CR-00057-BAH, 2017 WL 3575655, at *12-13 (D.D.C. Cir. August 17, 2017). In that case, the Court highlighted that the D.C. Circuit has suggested that the "preferred practice is for the trial court to make these determinations before the hearsay evidence is admitted." *United States v. Slade,* 627 F.2d 293, 307 (D.C. Cir. 1980). However, the Court noted the "practical impediments" to holding a pre-trial hearing on the preliminary questions about the existence of a conspiracy and the defendant and the declarant's part in it has led to the general practice in this jurisdiction to defer these determinations until trial. *Id* at. 17. For these reasons, the Court, found the government's argument persuasive and denied the defendants' request for a pre-trial hearing on the admissibility of the co-conspirator statements. *See Flores-Apodaca*, No. 1:14-CR-00057-BAH, 2017 WL 3575655, at *15 (D.D.C. Cir. August 17, 2017).

As this district and the other districts have held, there is no requirement that the Government prove the preliminary facts of the conspiracy prior to disclosing the co-conspirators' statements at trial. *See United States v. Carson*, 455 F.3d 336, 365 n.26 (D.C. Cir. 2006) (holding it was unnecessary to *conclude* that a defendant was a co-conspirator in order to *admit* another co-conspirator's statements.). "A court can preliminarily admit hearsay statements of co-conspirators, subject to connection through proof of conspiracy." *Gewin*, 471 F.3d at 201; *see also, United States v. White*, 116 F.3d 903, 915 (D.C. Cir. 1997) (upholding the district court's discretion to admit co-conspirator statements in a murder trial subject to connection of a conspiracy); *United*

*States v. Perholtz*, 842 F.2d 343, 356 (D.C. Cir. 1988) (upholding district court's discretion admitting statements of joint venture as co-conspirator statements connected to conspiracy); *Jackson*, 627 F.2d at 1218 (holding judge as final arbiter of admissibility questions); *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 186 (D.D.C. 2015) (denying defendant's request for a hearing of admissibility of co-conspirator statements and provisionally admitting the statements contingent upon the government showing at trial that the statements satisfy the provisions of Rule 801(d)(2)(E)); *United States v. Lorenzana-Cordon*, No. 03-cr.331-13-14 (CKK), at *178 (D.D.C. January 21, 2016) (holding the government may introduce co-conspirator statements subject to connection based on a preponderance of the evidence standard for conspiracy).   Likewise, in *United States v. Cooper*, 91 F. Supp. 2d 60, 78 (D.D.C. 2000), the Court noted that it is common practice in the D.C. Circuit to admit declaration of co-conspirators subject to connection.   *See also, United States v. Brockenborrugh*, 575 F.3d 726, 735 (D.C. Cir. 2009) (finding statements made in furtherance of lawful joint enterprise admissible); *Jackson*, 627 F.2d, at 1218 (holding judge as arbiter of admissibility questions even when evidence still subject to connection determination); *see also, United States v. Loza*, 763 F. Supp. 2d 108, 112 (D.D.C. 2011) (Mem. Op.) (trial court's denial of defendant's request to hold a pre-trial hearing to determine the admissibility of co-conspirator statements, deferring the decision until the close of the government's case-in-chief); *United States v. Brodie*, 326 F. Supp. 2d 83, 89-90 (D.D.C. 2004) (allowing admission of co-conspirator statements when preliminary hearing would be immensely time-consuming). Moreover, Fed. R. Evid. 104(b) expressly provides that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." *Brodie*,

326 F. Supp. 2d, at 89 (*citing* Rule 104(b) in denying a defense motion for a pretrial hearing on the admissibility of co-conspirator statements).

Further, this Circuit has widely disfavored conducting "mini-trials" in order to determine the admissibility of co-conspirator statements.  Indeed, courts routinely admit such evidence "to avoid what otherwise would become a separate trial on the issue of admissibility."  *Gantt*, 617 F.2d, at 845.  "[I]t is just impractical in many cases for a court to comply strictly with the preferred order of proof" as holding a pre-trial hearing would be "time consuming and highly duplicative" of testimony in the government's case-in-chief.  *Loza,* 763 F. Supp. 2d, at 113.  Likewise, in *White*, the Court noted that a preliminary hearing to determine the admissibility of co-conspirator statements "would have been wasteful of judicial time, as the hearing and the trial testimony on the [crime charged] would have been largely duplicative.  The trial court was fully entitled to bear this waste of time in mind."  116 F.3d, at 915-916.

The Defendant fails to cite a single case in this Circuit in favor of conducting a pre-trial hearing to determine the admissibility of co-conspirator statements.  The Defendant cites to *United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980) and *United States v. James,* 590 F.2d 575 (5th Cir. 1979) for the proposition that it is better practice for the trial court to make a determination before the statements are presented to the jury, implying that such determination should take place in a pre-trial hearing.  Def. Mot. Prelim at 3.  The *Jackson* court stated:

> [a]s to the procedural timing of the determination by the trial judge, the better practice is for the court to determine before the hearsay evidence is admitted that the evidence independent of the hearsay testimony proves the existence of the conspiracy sufficiently to justify admission of the hearsay declarations.

*Jackson*, 627 F.2d at 1218.

A full reading of the *Jackson* opinion makes clear that the Circuit Court opined that the "better practice" was to first determine the existence of a conspiracy *in the context of the evidence*

*presented at trial* prior to allowing testimony of the co-conspirator statement.  *Id.*  Even the *Jackson* court acknowledged that impracticalities at trial may also impede the determination that a conspiracy existed before admitting the statements and that a judge may exercise her discretion to admit the statements subject to connection.  *Id.*  "Then, if at the close of the government's case, or at any other critical point, the necessary connection has not been proven, the court must upon motion, and may *sua sponte*, strike the testimony that has not been sufficiently connected and direct the jury to disregard it."  *Id.*  The *Jackson* court also specifically rejected the defendant's request to hold a "mini-trial" to determine the existence of a conspiracy stating that "[d]istrict judges should follow the preferred order of proof, where possible, and they have discretion to proceed as Jackson requests, but they have no obligation to do so."  *Id* at 1218–1219.  And *James* does not support the Defendant's argument, as it interpreted Fed. R. Evid. 104 to require the judge, not the jury, to determine the admissibility of co-conspirator statements, but did not interpret the Rule to touch on the issue of *when* such a determination should be made.  *See* Fed R. Evid. 104; *James*, 590 F.2d at 579-80.

Ultimately while the court has the discretion to conduct a preliminary hearing, the D.C. Circuit has made clear that the preferred method is allowing the statements to be admitted subject to the Government showing (1) a conspiracy existed, (2) the Defendant and the declarant were involved in the conspiracy, and (3) the statement was made in furtherance thereof, and if those requirements are not met, striking the testimony that has not been sufficiently connected. Additionally, for all the above reasons and the recent decision in this District, the Defendant's request for a pre-trial hearing on the admissibility of the co-conspirator statements should be denied.

2.   A Pre-Trial Hearing May Jeopardize Witness Safety

In this matter there are significant safety and security concerns for the cooperating witnesses who will be testifying at trial, as well as for their families, that cause substantial concern about premature disclosure of the Government's witness list and/or Jencks Act material.  Should the Court order a preliminary hearing to determine the admissibility of co-conspirator statements, the Government would presumably be required to turn over Jencks Act material thereby identifying the Government's cooperating witnesses.  Indeed, in *United States v. Holland*, 41 F. Supp. 3d 82 (D.D.C. 2014), that District Court held that "[t]his Circuit has previously recognized that there is an inherent violence and danger that accompanies the cocaine trade and that disclosure of an informant's identity exposes them to the 'real potential of retaliation at the hands of cocaine traffickers.'"  *Id.* at 103 (*quoting, Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1330-01 (D.C. Cir. 2000)).  The Court in *Holland* held the informants' safety in that case to be a particularly sensitive issue that cautioned against early disclosure of Jencks material.  *Id.  See also, United States v. Edelin*, 128 F. Supp. 2d 23, 45 (D.D.C. 2001) (denying defendants request for a hearing of an advance determination of conspiracy as it would jeopardize the safety of cooperating witnesses and other persons).  The Court in *Edelin* went on to state that "a hearing to make an advance determination of conspiracy is unnecessary for the Court's determination by a preponderance of the evidence that a conspiracy existed." *Id*. at 45-46.  Likewise, the Government has the same concern in this case for the cooperating witnesses who will be testifying at trial.  Accordingly, the circumstances in this case necessitate that the Court exercise its discretion and deny the Defendant's request for a pretrial hearing to determine the admissibility of co-conspirator statements.

3. <u>The Defendant's Motion for a Pre-Trial Hearing is an Effort to Require an Early Disclosure of Jencks Material</u>

The Jencks Act provides that in a criminal prosecution, statements made by Government witnesses or prospective Government witnesses are not open to discovery or inspection by the defense until said witnesses have testified on direct examination in the trial of the case. *See United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1988). The pillars behind this principle are concerns for witness safety and security. Indeed, "[c]ongress provided for discovery of statements only after the witness has testified, out of concern for witness intimidation, subordination of perjury, and other threats to the integrity of the judicial process." *United States v. Morrow*, 2005 WL 3163806, at *6 (D.D.C. April 13, 2005) (denying defendant's pretrial Jencks request for government witness statements because witnesses had not yet testified). Therefore, the Defendant should not be allowed to circumvent the Jencks Act by requesting a pre-trial hearing on an issue properly dealt with at trial.

4. <u>The District Court should not require a summary of foundation evidence</u>

Defendant also argues, in the alternative, that should the District Court decide not to conduct the requested pre-trial hearing, then "the government should be required to provide a summary of its foundation evidence." *See* Def. Mot. Prelim at 5. The Defendant provides no authority to support this request and again offers no compelling reason for why the District Court should do so. The Government notes that it has provided the Defendant with voluminous discovery, to include intercepted telephone calls involving the Defendant and others, so that he should be aware of the Government's foundation evidence.

### F.  Motion to Compel Disclosure of Material Submitted in Support of Extradition, is Moot

In the Defendant's Motion to Compel, the Defendant moves the Court to compel the Government to produce copies of all evidentiary material submitted in support the Government's request to extradite the Defendant from Mexico to the United States.  Def. Mot. Compel at 1.  The Government has informed counsel for the Defendant that it will produce the extradition packet of the Defendant.  Thus, the Court should deny the Defendant's Motion to Compel production of the documents and intercepts relating to the extradition as moot.

### G.  Defendant's Motion for Disclosure of Informants, Production of Witness and Exhibit List, and Early Release of Jencks Material Should Be Denied

The Defendant asks for the Government to produce and disclose a witness/exhibit list; release witness *Jencks* and *Giglio* material; and disclose informant information.  Def. Mot. Wit. at 1.  Defendant argues that both due process and the right of confrontation require "early production" and will "provide a smooth presentation of evidence."  *Id.* at 1.

As detailed above and in the Government's Omnibus Motion, the evidence will establish the methods the Defendant utilized to protect his multi-kilogram shipments of cocaine and marijuana, including the employment of armed gunmen for protection, as well as acts of violence to ensure the payment of debts.  *See* Govt. Mot. In Lim.  Thus, there is a significant concern about the safety of the cooperating witnesses.  The Defendant has not met his heavy burden to show that disclosure is warranted.  For these reasons, as well as those detailed below, the Court should deny the Defendant's request for early disclosure of the witness/exhibit list, *Jencks* and *Giglio* material and informant information.

1.  <u>The Defendant's Early Request for Disclosure of the Witness/Exhibit List and
    *Jencks* and *Giglio* Material Should be Denied</u>

The Defendant contends that the production of the witness and exhibit list as well as the

early production of *Jencks* and *Giglio* material will assure his Fifth and Sixth Amendment rights

to due process and right of confrontation are met.   The Defendant also argues that "effective

confrontation requires fair notice" and "will also avoid the need for a trial continuance since

investigation of such witnesses could require the need to investigate internationally."   Def. Mot.

Wit. at 2.

The Confrontation Clause protections are two-fold, providing the Defendant the protection

to physically face those who will testify against him, and the right to cross examine those

witnesses.  *See Delaware v. Fensterer,* 474 U.S. 15, 18-19, 106 S.Ct. 292, 294 (1985) (*per curiam*).

The Defendant's arguments suggest that the Confrontation Clause compels the Government to

provide pretrial discovery; however, this theory falls far short of the case law that supports the

right of confrontation as a trial right only.  *Pennsylvania v. Ritchie,* 480 U.S. 39, 52–53, 107 S. Ct.

989, 999, 94 L. Ed. 2d 40 (1987).  ("The right of confrontation is a *trial* right, designed to prevent

improper restrictions on the types of questions that defense counsel may ask during cross-

examination.")  *Id.* quoting *California v. Green,* 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26

L.Ed.2d 489 (1970) ("[I]t is this literal right to 'confront' the witness at the time of trial that forms

the core of the values furthered by the Confrontation Clause"); *Barber v. Page,* 390 U.S. 719, 725,

88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968) ("The right to confrontation is basically a trial right").

The ability to question adverse witnesses, however, does not include the power to require the

pretrial disclosure of any and all information that might be useful in contradicting unfavorable

testimony.  Normally the right to confront one's accusers is satisfied if defense counsel receives

wide latitude at trial to question witnesses.  *Fensterer,* 474 U.S. at 20, 106 S.Ct., at 294.  In short,

the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.,* at 20, 106 S.Ct., at 294 (emphasis in original).  Therefore, based on the cases the Defendant cannot claim a Confrontation Clause violation.

With respect to the witnesses who participated in the conspiracy with the Defendant who the Government anticipates will testify at trial, Defendant's proffered reasons that an early production of a witness list and *Jencks* and *Giglio* material would allow for the "smooth presentation of evidence," Def. Mot. Wit. at 1, fails to satisfy the Defendant's "heavy burden." *United States v. Glover*, 583 F. Supp. 2d 5, 12 (D.D.C. 2008); *see also, Johnson*, 293 F. Supp. 2d at 6.  In support of the Defendant's position of early disclosure of witnesses, the Defendant relies on *United States v. Karake,* Cr. No. 02-256 (ESH) (ECF No. 215 & 224).  Def. Mot. Wit. at 2. However, this case fails to address the very proposition advanced by the Defendant as in that case, the court focused on the voluntariness of the defendant's statements, not on providing early disclosure of witnesses.  *Karake,* No. 0-CR-256-ESH.  The Government could not find any reference to the Defendant's position.

The Government acknowledges that the court has discretion to order pre-trial disclosure, however, as the D.C. Circuit long ago observed, the government has no obligation to disclose its witness list in advance of trial for noncapital cases.  *Glover*, 583 F. Supp. 2d, at 8 n. 10 (quoting, *United States v. Bolden,* 514 F.2d 1301, 1312 (1975)).  In *Bolden,* the defendant was convicted in the United States District Court for the District of Columbia of felony-murder and robbery.  The defendant claimed that he was harmed by the government's failure to disclose its witnesses prior to trial.  *Id.*  However, the court disagreed and held there was no government duty to disclose the witness list, as the case was not a capital case.  *Id.*  In the instant case, the Defendant is charged

with violations of Title 21, United States Code, Sections 959, 960, 963, and Title 18, United States Code, Section 2, none of which are capital offenses.   Therefore, as in *Bolden,* there is no requirement for the Government to disclose a witness/exhibit list.

As previously explained, the Jencks Act directs that in a criminal prosecution, statements made by government witnesses or prospective government witnesses are not open to discovery or inspection by the defense until said witnesses have testified on direct examination in the trial of the case. *See, Tarantino*, 846 F.2d, at 1414.   In this matter, as explained above, there are significant safety and security concerns for the cooperating witnesses who will be testifying at trial, as well as for their families, that would cause substantial concern about premature disclosure of the Government's witness list and/or Jencks Act material.   As such, this request should be denied at this time.

The Government is aware of its obligations under *Brady* and *Giglio*, and will continue to comply with its obligation to provide such material to the defense.   As such, the Government knows that it must disclose information that is material and favorable to the accused.   *Brady v. Maryland*, 373 US. 83, 87 (1963) (requiring prosecutors to "avoi[d] . . . an unfair trial" by producing, "upon request," evidence favorable to an accused . . . where the evidence is material to either guilt or punishment").   Under *Brady*, evidence is material "if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would be different."   *United States v. Bagley*, 473 U.S. 667, 682 (1985).   The Government also has a duty to disclose exculpatory evidence, which includes evidence that would tend to impeach the credibility of cooperating government witnesses.   *Giglio v. United States*, 405 U.S. 150 (1972); *see, Bagley*, 473 U.S. at 676 (*Brady* extends to impeachment evidence as well as exculpatory evidence); *United States v. Jackson*, 345 F.3d 59, 70–71 (2d Cir. 2003) (citing *In re United States*

27

*v. Coppa*, 267 F.3d 132, 139 (2d. Cir. 2001) ("Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness").

*Brady* and *Giglio* do not change the rules regarding discovery of the Government's evidence.   *See, Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and Brady did not create one.").   Rather, these cases place upon the government an affirmative duty of disclosure of certain types of evidence and/or information. They do not permit a defendant to go on a fishing expedition through the government's files looking for favorable information.  *United States v. Phillips*, 854 F.2d 273, 278 (7th Cir. 1988) ("[A] *Brady* request does not entitle a criminal defendant to embark upon an unwarranted fishing expedition through government files, nor does it mandate that a trial judge conduct an in camera inspection of the government's files in every case.").   The Government will continue to comply with all *Brady* and *Giglio* obligations.

### 2.   Disclosure of Informant Information Should Be Denied

Defendant has not proffered any reason why the disclosure of informant information is necessary and in addition, there is a significant public interest in the protection of an informer.  It is well-established that a defendant has no automatic right to the disclosure of a confidential informant or witness's identity.  *United States v. Celis*, 608 F.3d 818, 831 (D.C. Cir. 2010) (per curiam) (citing *Roviaro v. United States*, 353 U.S. 53, 62 (1957)).  To the contrary, a "heavy burden . . . rests on an accused to establish that the identity of an informant is necessary to his defense." *United States v. Skeens*, 449 F.2d 1066, 1070 (D.C. Cir. 1971).  "'Mere speculation' that an informant's testimony may assist the defendant is not sufficient to meet this burden." *United States v. Johnson*, 293 F. Supp. 2d 5, 6 (D.D.C. 2003) (quoting *United States v. Mangum*, 100 F.3d 164,

172 (D.C. Cir. 1996)).  Instead, the "informer's privilege" doctrine recognizes the "government's right to withhold the identity of confidential informants in furtherance of the public's interest in encouraging citizens to share with law enforcement officers any knowledge they have about crimes." *United States v. Holland*, 41 F. Supp. 3d 82, 104 (D.D.C. 2014) (citing *Roviaro*, 353 U.S. at 59); *Glover*, at 11.  Nevertheless, the privilege is not absolute. *Id.*  (citing *Rovario*, 353 U.S. at 59).

The Court may limit the Government's privilege of nondisclosure if upon balancing "the public interest in protecting the identity of confidential informers against the accused's right to prepare his defense" and upon "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors," disclosure "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Glover*, 583 F. Supp. 2d at 11; *United States v. Cooper*, 91 F. Supp. 2d 79, 85 (D.D.C. 2000) (quoting *Roviaro*, 353 U.S. at 61-62).  Given the defendant's "heavy burden," to meet this burden and to "overcome the public interest in the protection of the informer," the defendant "must show that the informer was 'an actual participant in or witness to the offense charged, whose identity is *necessary* to the defense.'"  *Cooper*, 91 F. Supp. 2d at 85 (quoting *Mangum*, 100 F.3d at 172) (emphasis added).

Safety of witnesses is regarded as an "important public interest" sufficient to outweigh the right to pre-trial disclosure. *United States v. Martinez*, 764 F. Supp. 2d 166, 169 (D.D.C. 2011). The D.C. Circuit has expressly acknowledged that "violence and risk of retaliation that attend this type of crime [i.e., cocaine trafficking] warrant an implied grant of confidentiality for . . .  a [confidential informant]." *Mays v. Drug Enforcement Administration*, 234 F.3d 1324, 1329 (D.C. Cir. 2000).  Indeed, courts have frequently limited a defendant's access to witness identities when

security is a legitimate concern.  *See, Martinez*, 764 F. Supp. 2d, at 169 (denying defendant's motion to disclose identities of confidential informants because disclosure "would expose the informants to danger in the violent drug community"); *Celis*, 608 F.3d at 834 (upholding district court's protective order allowing witnesses to testify under pseudonyms due to security concerns). As discussed above, there are serious safety and security concerns in this case and, for this reason, premature disclosure of the witnesses' identities would pose a significant danger to the witness and their families.  Since, the Defendant has not provided any reason to disclose informant information, this request should be denied.

### H.      Defendant's Motion for Grand Jury Minutes Should be Denied

The Defendant asks the District Court to direct the Government to produce grand jury records for *in camera* inspection.  Def. Mot. G.J. at 1.  This motion is without merit and should be denied.

The Defendant argues in his motion that he was the "victim of a broad-brush prosecutorial approach and thus indicted without credible specifics, in effect constituting guilt by association." *Id.* at 1.  The Defendant offers no factual support for this claim.  Further, the Defendant cites authority to the effect that grand jury records may be disclosed if a defendant shows that grounds exist for a motion to dismiss the indictment based on matters occurring at the grand jury, then offers no grounds for such an extreme request.  *Id*. at 2.

The secrecy of grand jury proceedings is preserved through Fed. R. Crim. P. Rule 6(e)(2) with limited exceptions allowing for disclosure in Rule 6(e)(3).  Specifically, Rule 6(e)(3)(E)(ii) authorizes courts to disclose grand-jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Grand-jury matters, in the context of Rule 6(e), encompasses "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations

or questions of jurors, and the like." *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir.

1980).   The "minutes and transcripts of the testimony presented to the grand jury" that the

defendant wishes to explore fall within the foregoing categories of protected information.   *See*

*Fund for Constitutional Gov't v. Nat'l Archives & Records*, 656 F.2d 856, 869 (D.C. Cir. 1981).

The Supreme Court has repeatedly refused to allow challenges to the nature and sufficiency

of evidence presented to the grand jury.   Rather the Court has held that "[a]n indictment returned

by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial

of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956).   In *Costello*, the

Court reasoned that if indictments were held open to challenges on the ground that there was

"inadequate or incompetent evidence before the grand jury, the resulting delay would be great."

*Id.*   Such a rule would allow defendants a kind of preliminary trial to determine the competency

and adequacy of the evidence before the grand jury, and the Court specifically held that such a

practice "is not required by the Fifth Amendment."   *Id.*   The Court affirmed this view when it

found that any rule that would "saddle the grand jury with mini-trials and preliminary showings

would assuredly impede its investigation and frustrate the public's interest in the fair and

expeditious administration of the criminal laws." *United States v. Dionisio*, 410 U.S. 1, 17 (1973).

Further, because a grand jury's sources of information are "widely drawn," "the validity of an

indictment is not affected by the character of the evidence considered." *United States v. Calandra*,

414 U.S. 338, 344–45 (1974).   As a result, "an indictment valid on its face is not subject to

challenge on the ground that the grand jury acted on the basis of inadequate or incompetent

evidence." *Id.* at 345.   Further, Rule 6(e) may not be used as "a fishing expedition in the hope of

developing something favorable to the defense." *Jackson v. United States,* 297 F.2d 195, 198

(D.C.Cir. 1961).

Additionally, the Supreme Court has found that the law presumes a grand jury acts within the legitimate scope of its authority and thus grand jury proceedings are accorded a presumption of regularity. *United States v. R Enterprises, Inc.*, 498 U.S. 292, 301–02 (1991). To defeat this presumption, courts have put a demanding legal burden on the defendant to present a particularized need or otherwise adequately overcome the presumption against disclosure of the grand jury materials. *See, e.g.*, *United States v. Wright,* 234 F. Supp. 3d 45, 47-8 (D.D.C. 2017) ("In this circuit, a defendant must show a 'particularized need' for disclosure …. The threshold for such a showing is very demanding, and the disclosure of grand jury information is 'exceedingly rare.'"); *United States v. Garcia*, 311 F. App'x 314, 317 (11th Cir. 2009) ("A party seeking grand jury material must show a 'particularized need' for the documents; generalized allegations will not suffice."); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 173 F.3d 757, 760 (10th Cir. 1999) ("No grand jury testimony is to be released for the purpose of a fishing expedition or to satisfy an unsupported hope of revelation of useful information . . . ."); *United States v. Warren*, 16 F.3d 247, 253 (8th Cir. 1994) ("[A] bare allegation that the records are necessary to determine if there may be a defect in the grand jury process does not satisfy the "particularized need" requirement."). Ultimately, only a defect that is "so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 802 (1989).

The Defendant has not met his burden to overcome the presumption of regularity surrounding grand jury proceedings. He has offered no "particularized need" for the disclosure to the District Court of grand jury materials. His allegation does not present a particularized need or otherwise adequately overcome the presumption against disclosure of the grand jury materials as required by the courts. The Defendant has failed to show, pursuant to Rule 6(e)(3)(E), that a

ground may exist to dismiss the Indictment because of a matter that occurred before the grand jury.

Therefore, the Defendant's request should be denied.

## IX.    CONCLUSION

For the reasons set forth below, the Government requests that the Court deny each of the

Defendant's Motions.

Respectfully submitted,

Arthur J. Wyatt
Chief, Criminal Division
U.S. Department of Justice
Narcotic and Dangerous Drug Section

By:    _/s/_
LaRai Everett
Emily Cohen
Trial Attorneys
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice
Two Constitution Square
145 N Street, NE
East Wing, Second Floor
Washington, D.C. 20530
Tel.: (202) 514-0917

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the CM/ECF system, to counsel of record for the Defendant, this 9th day of November, 2017.

/s/
LaRai Everett
Emily Cohen
Trial Attorneys
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice
